IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 19, 2013

IN RE: JACOBE M. J.

Direct Appeal from the Chancery Court for Putnam County
No. 201210A     Ronald Thurman, Chancellor

No. M2013-01246-COA-R3-PT - Filed December 5, 2013

This is a termination of parental rights case. Father appeals the trial court's termination of his parental rights on the ground of abandonment by willful failure to visit and willful failure to support pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(i). We conclude that the ground of abandonment by willful failure to visit and willful failure to support is met by clear and convincing evidence in the record, and that there is also clear and convincing evidence that termination of Father's parental rights is in the child's best interest. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Jason F. Hicks, Cookeville, Tennessee, for the appellant, Jerry P. J.

Martelia T. Crawford, Cookeville, Tennessee, for the appellee, Yvette F. D.

**OPINION**

**I. Background**

The child at issue, Jacobe M. J., was born on January 7, 2009 to Jessica M. D. ("Mother") and Jerry P .J. ("Father," "Respondent," or "Appellant").[1]  Mother and Father

---

[1] It is the policy of this court to use the initials of children and parties involved in juvenile court actions to protect the privacy of the children involved.

were never married.[2] Yvette F.D. ("Petitioner," "Grandmother," or "Appellee") is the child's maternal grandmother.

On April 17, 2012, Grandmother filed a petition in the trial court, seeking to terminate both Mother and Father's parental rights to the minor child. Grandmother also sought to adopt the child. As the ground for termination of their parental rights, Grandmother alleged that Mother and Father had abandoned the child by willful failure to visit and willful failure to support. Tenn. Code Ann. §36-1-113(g)(1); Tenn. Code Ann. §36-1-102(1)(A)(i). According to her petition, Grandmother obtained physical custody of the child on or about May 13, 2011, when she was granted temporary legal custody under a temporary restraining order. This temporary restraining order, which was entered by the juvenile court on May 13, 2011, enjoins Mother and Father from "removing the minor child from the [Grandmother's] physical custody."[3] Although Grandmother obtained physical custody through the May 13, 2011 temporary restraining order, the testimony at trial revealed that the child had been living with Grandmother continuously since November of 2010, when Mother moved into Grandmother's house with the child. Grandmother testified that Mother stayed with her "on and off" for several months, but that Mother often left the child in Grandmother's care for days without indicating her whereabouts. When Mother moved out of Grandmother's house, she left the child in Grandmother's care.

Father filed an answer to Grandmother's petition on May 10, 2012. While he admitted that the child had lived with Grandmother since at least 2011, Father denied that he had abandoned the child and averred that he had "attempted to provide support to the child."

By order of July 2, 2012, a guardian ad litem was appointed to represent the child. On October 2, 2012, Father's attorney filed a motion to withdraw, which motion was granted by order of November 14, 2012. The case was set for hearing and, on December 27, 2012, Grandmother's attorney filed an affidavit of service, indicating that Father was served with notice of the hearing by certified mail. Thereafter, Father requested that he be appointed counsel. By order of January 24, 2013, Father was found to be indigent and an attorney was appointed to represent him. By order of January 30, 2013, the case was continued to April 11, 2013 so that Father's new attorney could prepare for the hearing; the same order also changed the child's guardian ad litem.

_____

[2] Mother's parental rights were terminated by default judgment entered on August 14, 2012. She is not a party to the instant appeal.

[3] On June 12, 2012, the trial court entered a second temporary restraining order, enjoining Mother and Father from removing the child from any daycare or from the custody of any care provider.

Following the April 11, 2013 hearing, on May 14, 2013, the trial court entered a final judgment, terminating Father's parental rights on the ground of abandonment. We will discuss the trial court's specific findings below.

## II. Issues

Father appeals the trial court's termination of his parental rights. He raises two issues for review as stated in his brief:

> 1. Whether the trial court erred in finding, by clear and convincing evidence, that the Father abandoned the child by willfully failing to support him and failing to visit him.
>
> 2. Whether the trial court erred in finding, by clear and convincing evidence, that it was in the best interest of the child to terminate Father's parental rights.[4]

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash–Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash–Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn.

---

[4] Although this appeal was originally docketed for oral argument, upon agreement of the parties, the case was ultimately submitted to this Court on briefs.

Code Ann. § 36–3–113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

We note that in its May 14, 2013 order, the trial court specifically found that "after hearing the testimony of all the witnesses . . . the Grandmother, and her witnesses were very credible." It is well settled that when the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. Ground for Termination of Father's Parental Rights

As set out in its May 14, 2013 order, the trial court terminated Father's parental rights on the ground of abandonment pursuant to Tennessee Code Annotated Section 36-1-113(g)(1). In relevant part, the order states:

> 2. The Court hereby finds that the allegations by the Petitioner Grandmother are abandonment by the Father, as to willful failure to visit and willful failure to pay child support, and that based on the testimony in open court, the court finds that the ground[] ha[s] been proven by clear and convincing evidence that the Father has willfully abandoned the child and that the Grandmother met her burden of proof.

-4-

The Court further finds that there has been absolutely no child support paid by the father since the minor child went to reside with the Grandmother in November 2010, that the father was not and is not disabled, that he has maintained employment during this period of time, and he had the ability to pay child support. The court further finds that the Father did not pay for any daycare costs, did not provide any food, clothing or other necessaries for the minor child since November 2010. The court finds that the grandmother did nothing to prevent the father from paying any form of child support and providing any necessities for the minor child.

The court further finds that the father's excuse that there was no court order or request for child support, is insufficient to offset his duty of support.

Therefore, the court specifically finds that the father has willfully failed to support his minor child since November 2010.

The court further finds that there were no visits between the Father and the minor child between November 2010 until February 2013, and the father's excuse to this court was that his former attorney told him not to contact the Grandmother. The court finds that this excuse is insufficient because the Juvenile Court Order, he makes reference to, stated that neither parent could remove the child from the custody of the Grandmother and had nothing to do with contact or visits with the child. The Court further finds that the Father made no effort on his part to restore his relationship with the child until February 2013. The court finds that under the case law, the father has to take affirmative action or steps, which the father did not do in this case, to restore his relationship with his child, or to seek visitation. The court additionally finds that the Grandmother did nothing to prevent or hinder the father with his visitation. Therefore, the court finds that the Grandmother has proven father's willful failure to visit with the minor child by clear and convincing evidence.[5]

---

[5] Tennessee Rule of Civil Procedure 52 requires that, "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." It is too often the case that this rule is not strictly followed; however, this is not one of those cases. Here, the trial court made very specific findings concerning both its finding

(continued...)

Tennessee Code Annotated Section 36-1-102(1)(A)(i) defines "abandonment," in relevant part, as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit  or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

For purposes of this subdivision, "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the "willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. §36-1-102 (1)(D).[6]  Willful failure to visit means "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E).[7] As defined in Tennessee Code Annotated Section 36-1-102(1)(A)(i), *supra*, the four month time period for the ground of willful failure to visit or support is the four months immediately preceding the filing of the petition to terminate parental rights.  As noted above, the petition to terminate Father's parental rights in this case was filed on April 17, 2012.

Prior to the filing of the petition for termination of his parental rights, Grandmother testified that Father had visited, at most, two times—once around Christmas of 2010, and again in January of 2011 around the child's birthday. Neither of those visits occurred in the four months preceding the filing of the petition to terminate Father's parental rights. However, after the petition was filed, sometime in January of 2013, Grandmother stated that

---

[5](...continued)
regarding the ground for termination of Father's parental rights, and its determination that termination is in the child's best interest, see *infra*.  Accordingly, we are able to make a meaningful review in this case, and we wish to commend the trial court for the specificity contained in its order.

[6] Token support means that "the support, under the circumstances of the individual case, is insignificant given the parent's means."  Tenn. Code Ann. §36−1−102 (1)(B).

[7] Token visitation means that "visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

Father contacted her to set up a visit. Grandmother did not oppose this request and agreed to meet Father, with the child, at a local restaurant. From the record, it is clear that during the relevant time period, i.e., four months prior to the April 17, 2012 filing of the petition to terminate his parental rights, Father did not see the child, nor did he attempt to do so. It was only after the petition was filed that Father attempted to see the child. Tennessee Code Annotated Section 26-1-102(1)(F) clearly states that: "Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child." Accordingly, Father's visitation after the filing of the petition cannot cure his failure to visit in the four month period prior to the filing date. However, even after the petition was filed, the record indicates that Father's visitation was sporadic, and that his requests were made at his own convenience. After the initial visit in January of 2013, Grandmother testified that Father had visited with the child only four other times. Accordingly, even if we could consider the visitation after the petition was filed, based upon the record, we could only conclude that this visitation was, at best, token visitation. Tenn. Code Ann. § 36-1-102(1)(C).

Father testified that at one point while Mother was living at Grandmother's home with the child, he and Mother had gotten into a verbal altercation at Grandmother's home. At that time, Grandmother indicated that she did not want either Father or Mother at her home. However, other than this one occasion, there is no indication in the record that Grandmother ever kept Father from visiting with the child. In fact, as noted above, Grandmother accommodated Father's visitation requests by bringing the child to meet him. In his testimony, Father attempted to explain his lack of visitation by stating that he was under the impression (based upon alleged statements by his attorney) that he would be in violation of the temporary restraining orders, *supra*, if he tried to have visitation with the child. As noted above, the temporary restraining orders only enjoin Father from removing the child from Grandmother's physical custody and from taking him from daycare or from his care provider. There is nothing in these orders to indicate any limitation on Father's visitation.

Concerning abandonment by failure to provide more than token support, Grandmother testified that during one post-petition visitation, the child had complained of being hungry, but that Father made no attempt to buy the child any food. Rather, Father waited until after the Grandmother had paid for the child's meal then said: "If I had known he was hungry, I would have bought him something to eat." In addition, she testified that Father had never offered any financial support for the child, and had not otherwise provided any necessities for the child such as diapers, food, or the like. Grandmother further stated that Father had never sent Christmas or birthday gifts for the child. Grandmother, however, did indicate that during the four or five visits (beginning in January of 2013), Father did purchase items (such as drinks and food items) for the child, totaling approximately $12.00. Other than these nominal expenditures, there is no evidence that Father provided any other support for the

child.  Grandmother's testimony reveals that she has paid for the child's daycare expenses, his clothing, food, and everything else the child has needed.

Father testified that he had offered to pay the child's daycare expenses, but conceded that the Grandmother had ultimately paid the bill.  Concerning the fact that he had never paid child support, Father testified that he would have paid child support had there been a court order requiring him to do so.   When asked whether he had taken diapers or other necessities to Grandmother for the child, Father stated that he had not done so based upon his belief, *see* discussion *infra*, that he would be in violation of the temporary restraining order by doing so. Father did testify that he has been employed for most of the child's life.  The record indicates that although Father's statement is true in that he has had a steady stream of employment, he has not retained any job for a significant time period.  Rather, he appears to change jobs regularly because of layoffs or because he simply quits.  However, from the record, it appears that, during the child's lifetime, Father has had the means to pay some level of support, but has not done so.

Tennessee Code Annotated Section 36-1-102(1)(H) states that "every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support.  *See, e.g., **In re Shandajha A.G.**,* No. E2012-02579-COA-R3PT, 2013 WL 3787594 (Tenn. Ct. App. July 17, 2013) As discussed by this Court in ***State ex rel. Hayes v. Carter,*** No. W2005-02136-COA-R3-JV,  2006 WL 2002577 (Tenn. Ct. App. July 6, 2006):

> It is well settled in Tennessee that biological parents must, as a general matter, support their children until they reach the age of majority. *See* T.C.A. § 34-1-102(a), (b) (2001); ***Smith v. Gore***, 728 S.W.2d 738, 750 (Tenn.1987). Their support obligations are joint and several, and the extent of their obligations depends on their ability to provide support. . . . The parent's obligation to support, as well as the child's right to support, exist regardless of whether a court order exists, and regardless of whether the parents were ever married.

*Id*. at *2.  At the time of the filing of the petition, Father was over the age of eighteen; furthermore, there is no indication that Father was unaware, at any point in the child's life, that he was the child's natural father.  Accordingly, like the trial court, we find Father's argument that his failure to pay any child support due to the fact that there was not a court order requiring him to do so to be unpersuasive.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App.1994). When a parent has been found to be unfit upon establishment of a ground for termination of parental rights, then the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The focus shifts to the child's best interest. *Id*. at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

In addition to the ground of abandonment by willful failure to either visit or support the child, the trial court also specifically found that termination of Father's parental rights was in the child's best interest:

> 3. In making a best interest analysis, the court has evaluated the factors set forth in TCA 36-1-113(i), as to best interest, and finds as follows:
>
> A. That the father has not made sufficient adjustment to his circumstances that would make it safe for the child to be in his home. In particular, the father, knowing the child has serious medical problems (i.e., Asthma), smokes at least one (1) pack of cigarettes per day, and his girlfriend smokes, as well.
> B. The Grandmother has provided a safe, stable and good environment for the child. The Father is without excuse for failure to visit as stated hereinabove. Grandmother has been there for the child. . . .
> C. The father does not have a meaningful relationship with the child and is not bonded to the child. The court finds that just because a child recognizes a person does not mean that they are bonded to that person. The [Grandmother]. . .[has] established a meaningful relationship with the child, and the child is bonded with the Grandmother.
> D. The child is safe with the Grandmother and his medical condition has improved because of the efforts of the

Grandmother, in caring for the child. . . .

E. The father was neglectful of the child in that he has previously allowed the child to be in the presence of the Mother, whom he admitted, in open court was addicted to drugs, and allowed the Mother to drive and care for the child unsupervised. That the father continues to smoke knowing that the child suffers from a serious medical condition[, which is] aggravated by second hand smoke.

F. The Grandmother's home is safe and a good environment for the child. . . .

G. The father has paid no child support, and the Grandmother has paid significant costs to care for her grandson.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case at Tennessee Code Annotated Sections 36-1-113(i). These factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

> ***

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

> * * *

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or

-10-

controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that, "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." **In re M.A.R.**, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. **In re Audrey S**., 182 S.W.3d at 877.

Turning to the record, Grandmother testified about the child's breathing issues, which include asthma, sinusitis, and bronchitis. In addition, the child has tubes in his ears. He also suffers from occasional bouts of eczema. Grandmother testified that the child's condition has gotten better during his time with her. She stated that she makes sure he has regular doctor's visits, and that he takes his prescribed medications on schedule. Grandmother further stated that pursuant to doctors' orders, the child cannot be exposed to certain allergens, including smoke, perfumes, air fresheners, etc. Grandmother indicated that she has arranged her home so that the child will have minimal contact with such allergens.

Father testified that he has lived in his fiancé's home with her for approximately two years. Both Father and his fiancé have one child each from previous relationships. Both of these children live in the home with Father and his fiancé. Father briefly testified that the Department of Children's Services had been involved with him concerning the child in his care and custody, but that the case had been closed with him retaining custody. The record does not elaborate on the particular facts surrounding the Department's involvement. Regardless, Father's fiancé testified that both she and Father smoke. She stated that Father smokes approximately one pack of cigarettes per day, and that she smokes approximately three "little" cigars per day.

-11-

The record indicates that Grandmother retired from employment with the Cookeville Police Department in March of 2013. At the time of the hearing, Grandmother stated that she was employed full-time as a fitness instructor. Grandmother testified that she owns a three-bedroom, two-bath home in Cookeville, where she has lived since 1996. The child has his own bedroom in the home. Grandmother testified that she does have family help from her father, the child's great-grandfather, in caring for the child. The great-grandfather also testified at the hearing, and his testimony corroborates Grandmother's.

Concerning the child's relationship with Father, Grandmother testified that: "He [the child] doesn't ask about his father. We've had five visits. He doesn't talk about his father after the visits and doesn't ask about seeing him again." Betsy Dunn, a friend of Grandmother's, also testified. Ms. Dunn indicated that although she works for the Tennessee Department of Children's Services, she was not testifying in her official capacity. Ms. Dunn stated that she had visited Grandmother's home many times and had observed the child's relationship with Grandmother. Ms. Dunn testified that the relationship between the Grandmother and the child is "more like a mother-son bond." Ms. Dunn was also present at the meeting between the child and Father, which is mentioned above. She stated that although the child calls Father "Daddy," the child did not appear to be overly excited to see him. Rather, she opined that the child treats the Father as a "playmate." Father was also asked about his relationship with the child. In response to the question: "What kind of relationship do you and [the child] have," Father answered: "At this point, because of the two-year process that's been going on, it is slim. But that's not nothing [sic] that I . . . don't want to change."

From the totality of the circumstances, and in light of the statutory factors set out above, we conclude that clear and convincing evidence exists in the record to support both the trial court's termination of Father's parental rights on the ground of abandonment, and the trial court's finding that termination of Father's parental rights is in the child's best interest.

## VI. Conclusion

For the foregoing reasons, we affirm the order of the trial court, terminating Father's parental rights on the ground of abandonment by willful failure to visit and willful failure to support. The case is remanded for further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Father. Because Father is proceeding as a pauper in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE