IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 20, 2015


# IN RE MARCELL W.


**Appeal from the Circuit Court for Shelby County**
**No. CT00119114      Robert Samual Weiss, Judge**

_____


**No. W2014-02004-COA-R3-PT – Filed July 23, 2015**
_____


In this parental termination case, Mother appeals the termination of her parental rights to the minor child at issue.  We affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Reginald E. Shelton, Memphis, Tennessee, for the appellant, Michelle W.

Herbert H. Slatery, III, Attorney General and Reporter; Ryan L. McGehee, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.


**MEMORANDUM OPINION[1]**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## I.    Background

This appeal stems from a joint dependency and neglect/termination hearing that took place in the Shelby County Circuit Court. In a separate appeal regarding the dependency and neglect proceeding, *In re Marcell W.*, No.W2014-02120-COA-R3-CV (Tenn. Ct. App. July 16, 2015) ("*Marcell I*"), we previously affirmed the Circuit Court's finding that the minor child at issue in this case was the victim of severe abuse. In this Opinion, we address the trial court's termination of Mother's parental rights.

The minor child at issue, Marcell W.[2] ("Marcell"), was born in March 2012. On September 4, 2012, the Department of Children's Services ("DCS") received a referral concerning allegations of severe physical abuse committed against the minor child. Marcell had been admitted to LeBonheur Children's Hospital ("LeBonheur") in Memphis for severe injuries. Tanisha Harper ("Ms. Harper"), a DCS child protective services investigator, was assigned to investigate the situation. The medical consultation at LeBonheur revealed that Marcell presented with a number of significant medical conditions, including a subdural hematoma, bilateral hemorrhages, a liver laceration, and a left buckle fracture of the arm. When investigating the case, Ms. Harper discovered that Marcell had presented for a well-being checkup at his primary doctor the previous Friday. No issues were found during this checkup, and by all accounts, Marcell was in good health at that time.

Marcell and Mother spent the night at Marcell's grandmother's home following the checkup, but they returned to Mother's residence later that weekend. Ms. Harper did not discover that anything traumatic had happened to Marcell during his stay at his grandmother's home. On the Sunday prior to Marcell's admittance to LeBonheur, Mother apparently observed Marcell "stiffen up" periodically, but no medical action was taken at that time. On Monday, Marcell began having repeated hiccups, and according to Ms. Harper, Mother relayed that he became "non-responsive." The child was subsequently taken to the hospital.

When Ms. Harper discussed Marcell's injuries with Mother, Mother did not provide a specific explanation as to how they had occurred, other than to speculate that Marcell had hit his head on a wall. According to Ms. Harper, Mother informed Ms. Harper that she, Marcell, and her boyfriend all slept together in the same bed. Because the bed leaned against a wall, Mother surmised that Marcell may have hit his head on the wall while she was sleeping. Mother also informed Ms. Harper that she was the primary caretaker of Marcell. Marcell entered the custody of DCS on September 14, 2012. He

---

[2] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identity.

remained in DCS's custody as of the date of the hearing in this case on August 14-15, 2014. Marcell stayed in the hospital for approximately a month.

Mother was arrested on charges of aggravated child abuse in February 2013,[3] and in April 2013, the Juvenile Court of Shelby County found Marcell to be dependent and neglected and the victim of severe abuse. The Juvenile Court found that, on the basis of the testimony that was presented, Mother was the perpetrator of Marcell's injuries.[4] In its order, the Juvenile Court relieved DCS of making reasonable efforts as to Mother in light of its finding that Marcell had been a victim of severe abuse. Following a rehearing of the case in September 2013, the Juvenile Court upheld the prior findings that Marcell was dependent and neglected and the victim of severe abuse.[5] Mother subsequently appealed to the Shelby County Circuit Court, and the matter was later set for a *de novo* hearing.[6]

On March 18, 2014, prior to the hearing of Mother's *de novo* appeal, DCS filed a petition to terminate her parental rights in the Shelby County Circuit Court.[7] The petition alleged that two grounds justified terminating Mother's rights. First, the petition asserted that Mother had abandoned Marcell pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv). Second, the petition alleged that Mother had committed severe child

---

[3] Following her initial arrest, Mother was incarcerated for over two weeks. Although Mother argues in her brief that all criminal charges against her have now been dismissed, this contention is not supported by the record transmitted to us on appeal. Rule 14 of the Tennessee Rules of Appellate Procedure governs requests to consider post-judgment facts in this Court. Pursuant to Rule 14(b), requests to consider post-judgment facts must be made in a manner compliant with Rule 22 of the Tennessee Rules of Appellate Procedure. Rule 22 directs movants to file a written motion, which is to be accompanied by a memorandum of law in support of the motion and an affidavit, if needed. Tenn. R. App. P. 22. In this case, no motion was ever filed. Although certain documents were attached to Mother's appellate brief, this does not make them available for our consideration. *See Carney v. State*, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *4 n.2 (Tenn. Crim. App. Oct. 17, 2007) (noting that "'documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record'") (citations omitted).

[4] The Juvenile Court found that Mother committed severe abuse either by direct action or by her inaction in failing to protect Marcell. The Juvenile Court's finding was based, in part, on the evidentiary deposition of Dr. Karen Lakin. Dr. Lakin testified that Marcell's injuries were consistent with non-accidental trauma, specifically abusive head trauma.

[5] The Juvenile Court also upheld the prior ruling that DCS was relieved of making reasonable efforts to reunify Mother with Marcell.

[6] We note that when dependency and neglect cases are appealed to Circuit Court, the Circuit Court "must try the case de novo by hearing all the witnesses again and by rendering an independent decision based on the evidence received in the circuit court proceeding." *In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004).

[7] The petition also sought to terminate the parental rights of Marcell's father. Although the father's parental rights were ultimately terminated, he has not appealed.

abuse. The petition stated that Marcell had remained continuously in foster care since September 14, 2012, and averred that a change of caretaker would likely have a negative effect on his emotional, psychological, and medical condition. It also claimed that his best interests would be served by forever severing Mother's parental rights.

Following the filing of the petition, DCS moved to join the termination hearing with the hearing of Mother's *de novo* dependency and neglect appeal. The motion stated that the *de novo* dependency and neglect appeal was pending in another division of Circuit Court and asserted that both proceedings should be considered in a joint hearing due to a common issue of law and fact pertaining to allegations of severe abuse. DCS explained that a joint hearing would help ensure consistent rulings, avoid unnecessary delay, and preserve judicial resources. By order dated May 21, 2014, a consent order was entered transferring the termination of parental rights matter to the division of Circuit Court where the *de novo* appeal was pending.

On August 14 and 15, 2014, the Circuit Court held a joint hearing on the dependency and neglect appeal and termination issues. At the hearing, the Circuit Court heard testimony from several DCS case workers and Marcell's foster mother, and the medical deposition of Dr. Karen Lakin was read into the record. As we discussed in *Marcell I*, Dr. Lakin concluded that Marcell was a victim of a non-accidental traumatic injury and that Mother had offered no plausible explanation for his injuries. *In re Marcell W.*, No.W2014-02120-COA-R3-CV, slip op. at 9 (Tenn. Ct. App. July 16, 2015).

On September 29, 2014, the Circuit Court entered an order terminating Mother's parental rights. In its order, the Circuit Court found by clear and convincing evidence that Mother had committed severe child abuse against Marcell and that she had abandoned him within the meaning of Tennessee Code Annotated § 36-1-102(1)(A)(iv). The Circuit Court also found that it was in Marcell's best interests that Mother's parental rights be terminated. This timely appeal followed.

## II.    Issues

In her brief, Mother presents one issue for our review, stated as follows:

1. The Department of Children Services failed to sufficiently prove that it made reasonable efforts to reunite the Appellant and the minor child where the Case Manager readily conceded that a bond exists between Mother and minor child, that Mother has a stable residence, that Mother is visiting regularly with the minor child, that the Mother has been in compliance with the permanency plan.

4

## III. Standard of Review

Although parents have a fundamental right to the care, custody, and control of their children under both our state and federal constitutions, the right is not an absolute one. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted). "Well-defined circumstances exist under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015), *no perm. app. filed*. In Tennessee, such circumstances are defined by statute. *Id.* (citation omitted). Pursuant to the Tennessee Code, parties who have standing to seek the termination of a parent's parental rights must prove two things. First, they must prove at least one of the statutory grounds for termination. *In re J.C.D.*, 254 S.W.3d at 438 (citing Tenn. Code Ann. § 36-1-113(c)(1)). Second, they must prove that termination of parental rights is in the child's best interests. *Id.* (citing Tenn. Code Ann. § 36-1-113(c)(2)). "Because the stakes are so profoundly high, Tenn. Code Ann. § 36-1-113(c)(1) requires persons seeking to terminate a biological parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). The clear and convincing evidence standard also applies to the trial court's determination regarding the child's best interests. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). As we have previously observed, the heightened burden of proof under Tennessee Code Annotated § 36-1-113(c) requires us to adapt our customary standard of review. *In re Audrey S.*, 182 S.W.3d at 861. "First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d)." *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). "Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights." *Id.* (citations omitted).

## IV. Analysis

In this appeal, Mother presents only one issue for our review. Specifically, she asserts that DCS failed to sufficiently prove that it made reasonable efforts to reunite her with Marcell. In light of the recent Tennessee Supreme Court decision in *In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015), we conclude that Mother's assertion of error on this issue cannot be sustained. In the *Kaliyah* case, the Tennessee Supreme Court was confronted with an issue of first impression concerning "whether the State is required to prove that it made reasonable efforts to reunify the parent with the child as a precondition to termination." *In re Kaliyah S.*, 455 S.W.3d at 535. In holding that the State is not required to prove "reasonable efforts" as a precondition to termination, the Supreme Court explained as follows:

An action to terminate the parental rights of a biological parent is governed by Tennessee Code Annotated § 36-1-113. The language of Section 36-1-113 makes the State's efforts to assist the respondent parent one of the factors to be considered in determining whether termination of the parent's rights is in the child's best interest. After reviewing the language of Section 36-1-113, other pertinent statutes, the legislative history, and caselaw interpreting Section 36-1-113, we hold that, in a termination proceeding, the extent of the efforts made by the State is weighed in the court's best-interest analysis, but the State need not prove that it made reasonable efforts as an essential component of its petition to terminate parental rights.

*Id.* Although Mother seems to suggest that the termination of her parental rights cannot occur absent sufficient proof of the State's efforts at reuniting her with her child, the decision in *Kaliyah* negates her argument.[8]

We observe that Mother's brief does not challenge any of the grounds upon which her parental rights were terminated. She has not challenged the trial court's finding that she committed severe child abuse against Marcell, nor has she challenged the trial court's finding related to the statutory ground of abandonment. Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure provides that the brief of the appellant shall contain, "under appropriate headings," "[a] statement of the issues presented for review[.]" Tenn. R. App. P. 27(a)(4). Because Mother's "statement of the issues" section of her brief does not challenge either of the grounds upon which the trial court terminated her parental rights, any issues regarding those grounds are waived. *See State v. Freeman*, 402 S.W.3d 643, 653 (Tenn. Ct. App. 2012) (citation omitted).

Sufficient proof of a statutory ground for termination, however, does not by itself justify the termination of parent's parental rights. "Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 573 (Tenn. Ct. App. 2013) (citation omitted), *perm. app. denied* (Tenn. Mar. 5, 2014). "When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest." *Id.* at 572 (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)).

As with the predicate statutory grounds that supported the termination of her parental rights, Mother's brief fails to raise the trial court's findings regarding Marcell's

---

[8] Moreover, we note that, in proceedings before the Shelby County Juvenile Court in the dependency and neglect litigation, DCS was relieved of making reasonable efforts as to Mother in light of the finding that Marcell had been a victim of severe abuse.

best interests as an issue for our review. In the argument section of her brief, Mother makes a passing reference that "the combined weight of the . . . facts do not support the trial court's ultimate conclusion[,]" but nowhere is a "best interest" argument specifically developed in a manner that complies with the dictates of Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 27(a)(7) (setting out the specific requirements for the argument section of an appellant's brief). As we previously stated, failure to raise an issue in an appellant's "statement of the issues" section is sufficient by itself to waive an issue for review. *Childress v. Union Realty Co., Ltd.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (citation omitted).

Although Mother's brief waives any issue regarding the trial court's best interests analysis on account of her failure to comply with Rules 27(a)(4) and 27(a)(7) of the Tennessee Rules of Appellate Procedure, we nonetheless exercise our discretion to review the trial court's findings concerning Marcell's best interests due to the gravity of the consequences involved in the termination of Mother's parental rights.[9] *See In re Justin K.*, No. M2012-01779-COA-R3-PT, 2013 WL 1282009, at *8 n.6 (Tenn. Ct. App. Mar. 27, 2013) (exercising discretion to address the minor child's "best interests" on appeal notwithstanding a waiver by the appellant on the issue). When conducting a best interests analysis, conflicts between the interests of the parent and child are to be resolved in "favor of the rights and best interest of the child." *In re Jacobe M.J.*, 434 S.W.3d at 573 (citing Tenn. Code Ann. § 36-1-101(d)). Indeed, the best interests analysis "must be viewed from the child's, rather than the parent's, perspective." *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (citations omitted). In Tennessee, the Legislature has codified a list of nine, non-exclusive factors that trial courts are to consider when determining the bests interests of a child in a termination of parental rights proceeding. These factors are as follows:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

---

[9] Additionally, although we have concluded that Mother's "reasonable efforts" issue, as presented, is misplaced in light of the Tennessee Supreme Court's decision in *Kaliyah*, we note that the extent of the State's efforts to assist a parent are weighed in the best-interest analysis. *In re Kaliyah S.*, 455 S.W.3d at 535. Because Mother specifically raised the reasonableness of DCS's efforts in this case, we will consider her grievance in the context of our best interest analysis.

7

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2014). "Ascertaining a child's best interests does not call for a rote examination" of these factors, and the relevancy and weight to be given to each will depend on the unique facts of the case. *In re Audrey S.*, 182 S.W.3d at 878. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.* (citing *Moody*, 171 S.W.3d at 194).

In this case, we cannot conclude that the trial court erred in finding by clear and convincing evidence that termination of Mother's parental rights is in Marcell's best interests. Although Mother's brief generally questions the sufficiency of DCS' efforts in reuniting her with Marcell, we note that the Juvenile Court relieved DCS of making reasonable efforts in its adjudication of the dependency and neglect litigation. Unfortunately, this is a case where Marcell has been subjected to severe abuse, *see* Tenn. Code Ann. § 36-1-113(i)(6), and the testimony before the trial court established that he

continues to suffer from a variety of medical ailments, including cerebral palsy. His medical conditions require frequent doctor visits, but his foster mother testified at trial that Mother had not been to one of his medical appointments in more than a year. Moreover, the trial court found that "a change of caretakers and physical environment is likely to have a traumatic effect on [Marcell's] emotional, psychological, and medical condition[.]" *See* Tenn. Code Ann. § 36-1-113(i)(5). Based on the record transmitted to us, we are compelled to affirm the trial court's termination of Mother's parental rights.

## V. Conclusion

The order of the Circuit Court terminating Mother's parental rights is hereby affirmed. Costs of this appeal are assessed against Mother. Because Mother is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
ARNOLD B. GOLDIN, JUDGE