IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2020

**IN RE LILLIAN W.**

**Appeal from the Chancery Court for Warren County**
**No. 687-A       Larry B. Stanley, Jr., Judge**



**No. M2019-02225-COA-R3-PT**

Father living in California had his parental rights terminated by default judgment. Father appealed, and we vacate the termination because the trial court failed to conduct a best interest analysis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE, and KRISTI M. DAVIS, JJ., joined.

Howard Luxon Upchurch, Pikeville, Tennessee, for the appellant, Tony N.

Luke Austin Evans and Michael Sebastian Hibdon, Murfreesboro, Tennessee, for the appellees, Irish W. and Ramsey W.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Tony N. is the father of Lillian W., who was born in 2008. Lillian's mother passed away shortly before Lillian's second birthday. Lillian then lived with her maternal grandparents for about eight years, until they died. In September 2018, Lillian's maternal uncle and his wife ("Petitioners") were awarded temporary custody of Lillian. On October 9, 2018, Petitioners filed a petition to terminate Father's parental rights and adopt Lillian, asserting as grounds for termination abandonment by failure to visit and failure to support for more than four months immediately preceding the filing of the petition.

Father was residing in California when Petitioners filed their petition. The process server in California was unable to serve Father at the residential address Petitioners initially

provided. Petitioners subsequently obtained Father's correct address, and a summons return form filed with the trial court indicated that Father was personally served with an alias summons on February 8, 2019. Petitioners moved for a default judgment on March 5 because Father had not entered an appearance or filed an answer to the petition within thirty days (although thirty days had not passed from the time of service on Father when Petitioners filed their motion). The trial court held a hearing on Petitioners' motion for default on April 23, 2019. Father failed to appear, and the court issued an order terminating Father's parental rights later that day.

Father filed an answer to Petitioners' petition on April 29, 2019, denying that the trial court had personal jurisdiction over him. He also denied proper service of process. Father denied abandoning Lillian either by failing to visit her or failing to pay for her support and asserted that Petitioners and Lillian's former custodians interfered with his visitation and contact with Lillian. Father also asserted that Petitioners and Lillian's former custodians refused to accept "support and other direct and indirect forms of assistance" from him. Finally, Father contended that it was not in Lillian's best interest for his parental rights to be terminated.

On May 24, Father moved to set aside the default judgment on the grounds that he was not personally served with process in this action; that he was not served with Petitioners' motion for default; and that terminating his parental rights to Lillian violated his constitutional rights as a parent to the custody of his child and the opportunity to maintain a parent-child relationship with her. Petitioners responded that they had communicated with Father's local (Tennessee) attorney via e-mail and provided him with a copy of the termination petition in November 2018. They stated that they served Father by United States mail with their motion for default at the address where the process server had personally served Father with the termination petition. Petitioners further asserted that Father's motion to set aside the default judgment on May 24 was untimely because it was filed more than thirty days after the trial court entered the default judgment.

The trial court denied Father's motion to set aside the default judgment. The court found that Petitioners "took every reasonable measure to serve Respondent with the Petition to Terminate Parental Rights and for Adoption and complied with the Tennessee Rules of Civil Procedure." The court further found that because Father was served in California, he was "on notice" of both the termination petition and the motion for default judgment.

Father then moved to amend and make additional findings of fact, moved for a new trial, and moved to file a post-hearing affidavit. In the affidavit, Father acknowledged residing at the address where the process server stated he served Father with the summons and termination petition, but Father stated that he was not served with the termination petition and did not receive a copy of the motion for default in the mail. According to Father, he did not become aware of Petitioners' proceeding against him until his attorney

contacted him on or about April 24, 2019, to inform him that Petitioners had obtained a default judgment against him. On November 20, 2019, the court denied Father's motion to amend, make additional findings, or for a new trial. The court wrote that it had previously ruled on Father's motion to set aside the default judgment and that it was "standing by its previous ruling"; that it had granted Petitioners a default judgment after proper notice was provided Father and that it was "standing by its previous rulings" that clear and convincing evidence supported its decision to terminate Father's parental rights; and that Father failed to describe new evidence to support granting a new trial.

Father appeals the trial court's judgment, contending that the trial court erred by failing to make a written finding that clear and convincing evidence established that terminating his parental rights was in Lillian's best interest. He further asserts that the trial court erred in finding that Father was properly served and in denying his motion to set aside the default judgment or to amend the judgment, and in denying his motion for a new trial.

## II. ANALYSIS

### A. Standard of Review in Termination Proceedings

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005)). *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Although parental rights are fundamental, they are not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, 2005 WL 1021618, at *7).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must

prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

## B. Termination of Father's Rights

The statute governing parental termination lists "abandonment" as a ground for termination, as that term is defined in Tenn. Code Ann. § 36-1-102. Tenn. Code Ann. § 36-1-113(g)(1). Petitioners rely on the definition of abandonment contained in Tenn. Code Ann. § 36-1-102(1)(A)(i) to prove Father abandoned Lillian. That section provides:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). The evidence presented at the default hearing included testimony by Petitioners regarding Father's abandonment. Lillian's uncle, who was one of the petitioners, testified as follows:

Q: Okay. And in the four months prior to filing that petition, had [Father] had any contact with Lillian?

A: No.

Q: In the four months prior to filing the petition, did [Father] have any kind of -- make any kind of support payments for Lillian?

A: No.

Q: All right. And do you know the last time [Father] had any contact with Lillian?

A: I believe it was around September of 2012.

Q: Okay. And -

THE COURT: Oh. So it's been a long time?

RAMSEY W.: Yes.

THE COURT: Okay.

Q: And do you know the last time [Father] made any support payments for Lillian?

A: That would've been February/March of 2010, right before my sister passed.

Q: Okay. And should the Court terminate [Father's] parental rights, do you intend to adopt Lillian?

A: Yes, sir.

Irish W., Lillian's aunt and Ramsey W.'s wife, testified next, but her testimony was even more limited and consisted of the following:

Q: Okay. And did you hear the questions that I asked Mr. W.?

A: Yes.

Q: And do you agree with the answers that Mr. W. gave?

A: I do.

Q: Okay. And should the Court terminate [Father's] parental rights, do you intend to adopt Lillian?

A: Yes, we do.

Petitioners introduced no evidence whatsoever regarding the child's best interest.

In its order terminating Father's parental rights, the trial court's findings of fact and conclusions of law regarding the grounds for termination included the following:

9. The Court finds that in the four months preceding the filing of the Petition in this matter, being June 9, 2018 through October 9, 2018, [Father] failed to visit with the child.

10. The Court finds that in the four months preceding the filing of the Petition in this matter, being June 9, 2018 through October 9, 2018, [Father] failed to financially support the child.

11. Therefore, this Court finds by clear and convincing evidence that [Father] has abandoned the minor child, pursuant to TCA §36-1-113(g)(1) and 36-1-102.

Although Petitioners offered no proof regarding Lillian's best interest, the trial court concluded that terminating Father's parental rights was in Lillian's best interest. The court made no finding of facts regarding Lillian's best interest, but it concluded as follows:

12. The Court specifically finds that the termination of the parental rights of [Father] is in the best interest of the minor child, LILLIAN [W.]

A parent's rights may be terminated by default judgment, but "proof must be presented as to legal grounds and best interest pursuant to Tenn. Code Ann. § 36-1-113." Tenn. Code Ann. § 36-1-117(n); *see also In re Connor B.*, 603 S.W.3d 773, 782-83 (Tenn. Ct. App. 2020). Thus, proof regarding the grounds for termination alone is not enough to terminate a parent's rights; proof must also be introduced regarding the best interest of the child at issue. Because some parental misconduct can be redeemable, it is not always in a child's best interest for a parent's rights to be terminated even if a ground for termination is established by clear and convincing evidence. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The trial court, therefore, is required to conduct a best interest analysis based on evidence in the record and then determine by clear and convincing evidence that it is in a child's best interest for a parent's rights to be terminated before

entering an order terminating a parent's rights. Tenn. Code Ann. § 36-1-113(c); *In re Carrington H.*, 483 S.W.3d at 522.

The factors a trial court is required to consider in conducting a best interest analysis include the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). Trial courts are required to consider each of the nine factors listed in the statute. *In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017). As the Court wrote in *In re Gabriella D.*,

> [T]he best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. *See In re Audrey S.*, 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. *In re Carrington H.*, 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White v. Moody*, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof.

*Id.* at 682.

There have been cases where a trial court has terminated a parent's rights by default judgment and we have vacated the termination decree on appeal because the trial court did not have any evidence before it of the child's best interest. *See In re B.G.J.*, 215 S.W.3d 396, 399 (Tenn. Ct. App. 2006) (vacating termination judgment where trial court failed to hold evidentiary hearing to consider grounds or best interest); *Tenn. Dep't of Children's Servs. v. D.L.M.L.*, No. E2005-02194-COA-R3-PT, 2006 WL 1072155, at *1 (Tenn. Ct. App. Apr. 24, 2006) (same). As we explained in *D.L.M.L.*:

> [W]hen a parent does not respond to a petition to terminate parental rights and a default judgment is sought, a trial court nevertheless must hear testimony and otherwise conduct a hearing where sufficient evidence is offered for the trial court to determine if grounds for terminating the parental rights have been proven by clear and convincing evidence, and whether it has been proven by clear and convincing evidence that terminating the parental rights was in the best interests of the children. Without being able to evaluate this critical but absent evidence, we have no choice but to vacate the judgment of the Juvenile Court.

*D.L.M.L.*, 2006 WL 1072155, at *2.

As noted above, Petitioners presented evidence regarding the grounds for terminating Father's rights, but they failed to present any evidence regarding Lillian's best

interest. Because the trial court failed to conduct a best interest analysis and conclude by clear and convincing evidence that it was in Lillian's best interest to terminate Father's rights before entering an order terminating those rights, we must vacate the trial court's judgment.

The other issues Father raises on appeal are pretermitted by our decision vacating the trial court's judgment.

### III. CONCLUSION

The trial court's judgment terminating Father's parental rights is vacated and this case is remanded for further proceedings in accordance with this opinion. Costs of this appeal shall be taxed to the appellees, Irish W. and Ramsey W., for which execution shall issue if necessary.

 

_____
ANDY D. BENNETT, JUDGE