IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 3, 2018

**IN RE  BILLY F.**

**Appeal from the Juvenile Court for Cocke County**
**No. TPR-05806      Brad Lewis Davidson, Judge**

_____

**No. E2018-01639-COA-R3-PT**

_____

Father appeals the trial court's finding that termination of his parental rights to his son is in the child's best interest. Because we conclude that clear and convincing evidence supports both the grounds for termination found by the trial court and the trial court's best interest finding, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Ryan T. Logue, Dandridge, Tennessee, for the appellant, Terry A. T.

Herbert H. Slatery, III, Attorney General and Reporter; Matt D. Cloutier, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**MEMORANDUM OPINION[1]**

**Background**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On March 27, 2018, the Tennessee Department of Children's Services ("DCS") filed a petition to terminate the parental rights of Miranda L.F. ("Mother") and Terry A.T. ("Father") to their minor child, born in May 2016.[2] The petition alleged that the child came into DCS custody on July 11, 2017, and was later adjudicated dependent and neglected on November 2, 2017. With regard to Father,[3] the petition alleged that Father was currently incarcerated, had not visited the child in the four months prior to his incarceration, and exhibited a wanton disregard for the child prior to his incarceration. The petition also alleged that Father failed to manifest a willingness and ability to assume custody of the child.

A trial occurred on August 28, 2018. Mother was not present for the hearing; Father participated telephonically from jail. Only Father and DCS foster care worker Kaitlyn Wetzel testified. The proof showed that Father was arrested on January 23, 2018 on charges of possession of a firearm by a convicted felon,[4] simple possession, and child endangerment.[5] Father remained in jail following his arrest and on May 23, 2018, Father pleaded guilty to the firearm charge. Father was sentenced to two years of incarceration and is expected to be released in January 2020.[6]

The evidence was undisputed that Father visited the child only twice in its life: once at the child's birth and once prior to the removal of the child from Mother's custody.[7] According to Father, however, his failure to visit was the result of Mother's efforts to keep him from the child. Father conceded, however, that he knew the location of the courthouse and had been involved in other litigation concerning the child prior to his incarceration, but never formally sought visitation even after the child was placed in DCS custody. Indeed, it appears that Father's contact with DCS was minimal despite their efforts to contact him. Only once Father was incarcerated was Ms. Wetzel able to

---

[2] In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

[3] Of course, the petition also alleged grounds against Mother. However, because Mother is not a party to this appeal, we confine our review only to those facts relevant to the termination of Father's parental rights.

[4] Father's prior felony was for aggravated robbery. This crime occurred prior to the birth of the child.

[5] The record does not indicate the factual basis for the child endangerment charge. It does not appear that Father was convicted of child endangerment or simple possession. Father admitted, however, that with regard to the simple possession charge, he was in possession of marijuana, but that he "went to get it for a friend."

[6] Although not entirely clear from the record, it appears that Father's conviction resulted in a violation of his probation on the prior aggravated robbery offense. Specifically, the judgment in Father's criminal case states that his sentence for the firearm offense is "[c]onsecutive to: Davidson County robbery conviction and any unserved sentences."

[7] Father did not give a specific date for this visitation. Father testified, however, that Mother informed Father that he would be permitted no more visitation with the child so long as Father brought his current wife to the visitation. Father also testified that five or six months after the child was born, Mother blocked him from communicating with her. As such, even when Mother and Father were in contact, Father visited only twice over an approximate six month period.

provide him with a copy of the Criteria and Procedures for Termination of Parental Rights. Father paid no child support for the child until he was ordered to do so in November 2017.

Following the removal of the child, he was placed in foster care. By the time of trial, DCS had identified a pre-adoptive home for the child. The child had visited with the potential parents on numerous occasions and had bonded with these parents. Indeed, Ms. Wetzel testified that the child refers to the pre-adoptive parents as "mommy and daddy."

At the conclusion of the proof, the trial court orally ruled that sufficient evidence was presented to find clear and convincing evidence of abandonment by an incarcerated parent and failure to manifest a willingness and ability to assume custody of the child. The trial court also ruled that it was in the child's best interest for Father's parental rights to be terminated. The trial court entered a written order memorializing its oral ruling on September 4, 2018. Father thereafter appealed to this Court.

## Issues Presented

Father raises a single issue in this appeal: whether the trial court erred in finding clear and convincing evidence that termination of Father's parental rights is in the child's best interest. Pursuant to this Court's duty established in *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), we will also consider whether clear and convincing evidence establishes the grounds for termination found by the trial court. *Id.* at 525–26 ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.").

## Standard of Review

The Tennessee Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d

425, 429 (Tenn. Ct. App. 1983)); *see also* **Santosky v. Kramer**, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); **In re Angela E.**, 303 S.W.3d at 250.

**In re Carrington H.**, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" **In re Jacobe M.J.**, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting **In re W.B.**, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). Thus, a party seeking to terminate a parent's rights must prove (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); **In re D.L.B.**, 118 S.W.3d 360, 367 (Tenn. 2003); **In re Valentine**, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. **Santosky**, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); **In re Valentine**, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." **In re M.J.B.**, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); **In re Carrington H.**, 483 S.W.3d at 523–24 (citing **In re Bernard T.**, 319 S.W.3d 586, 596 (Tenn. 2010); **In re M.L.P.**, 281 S.W.3d 387, 393 (Tenn. 2009); **In re Adoption of A.M.H.**, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. **In re M.L.P.**, 281 S.W.3d at 393 (quoting **In re Adoption of A.M.H.**, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. **In re Angela E.**, 303 S.W.3d at 246.

**In re Carrington H.**, 483 S.W.3d at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## Discussion

## Grounds

The trial court found two grounds to terminate Father's parental rights: (1) abandonment by an incarcerated parent for willful failure to visit; and (2) failure to manifest a willingness and ability to assume custody. We will briefly consider each ground in turn.

## I.

Abandonment is a statutory ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). For purposes of this appeal, Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (providing additional guidance on how to calculate the four month period in some situations).

The trial court made the following findings on this ground:

> The Court finds that, at the time of the filing of the Petition, [Father] was incarcerated on charges of Child Endangerment, Felon in Possession of a Firearm, and Possession of Schedule VI. [Father's] incarceration only

- 5 -

serves as the triggering event; the Court has considered [Father's] pre-incarceration behavior which includes a failure to visit the child for the past 18 months, even before the child entered State's custody. The Court finds unconvincing [Father's] testimony that the child's mother kept him from visiting, in particular given that [Father] was aware of the location of the courthouse and attended child support court and still made no pleadings or attempts to obtain visitation through legal means. In addition to that, the Court finds particularly troubling that one of the charges that [Father] received was for Child Endangerment, although unfortunately there was no clear evidence as to how that charge was resolved, if it has been.

The evidence does not preponderate against the trial court's findings on this issue. Father was incarcerated when the termination petition was filed and remained in incarceration at the time of trial. The evidence shows that in the relevant four month period, from September 23, 2017, to January 23, 2018, when Father was incarcerated, Father did not visit the child a single time. Even before this time, Father visited the child no more than two instances in the child's entire life and made no effort to enforce his visitation rights despite ongoing litigation concerning the child of which Father had notice. Even once the child was placed in DCS custody, thereby eliminating Mother's alleged interference in Father's visitation, Father still made no real effort to visit the child. This failure to visit, coupled with Father's decision to possess a firearm as a felon, which apparently resulted in a violation of his probation, and his failure to pay consistent support also show a wanton disregard for the welfare of the child. *Cf.* ***In re Audrey S.***, 182 S.W.3d 838, 867–68 (Tenn. Ct. App. 2005) ("We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child."). As such, we conclude that clear and convincing evidence supports this ground for termination.

## II.

The trial court also found that Father failed to manifest an ability and willingness to assume custody of the child pursuant to Tennessee Code Annotated section 36-1-113(g)(14). This ground may be found when

A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). We have previously held that evidence was sufficient to meet this ground when it showed that the parent voluntarily chose to live a

- 6 -

lifestyle that lacked stability. *See **In re Morgan K.**,* No. M2018-00040-COA-R3-PT, 2018 WL 5733291, at *13 (Tenn. Ct. App. Oct. 31, 2018).

The trial court made the following findings regarding this ground:

> [Father] has likewise shown no attempt to parent this child. Despite knowing the location of the courthouse, [Father] made no effort to file pleadings to have visitation or custody of the child. Then, [Father] chose to engage in acts that displayed a disregard for the child's welfare, including racking up charges for Child Endangerment and Felon in Possession of a Firearm. There is no doubt that his continued incarceration creates an environment that would not be safe for the child to return.

Again, the evidence does not preponderate against these findings. Due to Father's criminal activity and incarceration, he has no current ability to parent the child. Likewise, in declining to make real effort to establish a relationship with the child even prior to his incarceration, Father has shown that he is largely unwilling to take the steps necessary to assume custody of the child. *See **In re Jonathan M.**,* No. E2018-00484-COA-R3-PT, 2018 WL 5310750, at *5 (Tenn. Ct. App. Oct. 26, 2018) ("Parents must have demonstrated their willingness by attempting to overcome the obstacles that prevent them from assuming custody or financial responsibility for the child."). Moreover, given Father's repeated criminality and the fact that he has no relationship with the child, placing the child in Father's care would create a substantial risk of harm to the child. Thus, this ground is supported by clear and convincing evidence.

### Best Interest

Having determined that at least one ground for termination is supported by clear and convincing evidence, we proceed to consider whether clear and convincing evidence supports the trial court's determination that termination of Father's parental rights is in the child's best interests. "Upon establishment of a ground for termination, the interests of the child and parent diverge, and the court's focus shifts to consider the child's best interest." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). Even where a parent is unfit, termination may not necessarily be in the best interests of the child. *Id.*

Tennessee's termination statute lists the following factors to be used in the best interest analysis:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such

duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The Tennessee Supreme Court has explained that:

Facts considered in the best interests analysis must be proven by a preponderance of the evidence, not by clear and convincing evidence. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. When considering these statutory factors, courts must remember that the child's best interests are viewed from the child's, rather than the parent's, perspective. Indeed, a focus on the perspective of the child is the

common theme evident in all of the statutory factors. When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child.

*In re Gabriella D.*, 531 S.W.3d 662, 681–82 (Tenn. 2017) (internal citations omitted). Furthermore, "[a]scertaining a child's best interests does not call for a rote examination" of the statutory factors. *In re Audrey S.*, 182 S.W.3d at 878. The analysis requires "more than tallying the number of statutory factors weighing in favor of or against termination." *In re Gabriella D.*, 531 S.W.3d at 682 (citing *White v. Moody*, 171 S.W.3d 187, 193–94 (Tenn. Ct. App. 2004)). "The facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case," and the analysis "must remain a factually intensive undertaking." *In re Gabriella D.*, 531 S.W.3d at 682. Thus, "[d]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 878). In undertaking this analysis, the court must examine all of the statutory factors, as well as other relevant proof put forth by the parties. *Id.*

Father contends that the trial court erred in finding that it was in the child's best interest to terminate his parental rights, citing the dissent in *In re Gabriella D.*, No. E2016-00139-COA-R3-PT, 2016 WL 6997816, at *21 (Tenn. Ct. App. Nov. 30, 2016) (Stafford, J., dissenting), *perm. app. granted* (Tenn. Mar. 8, 2017), *rev'd*, 531 S.W.3d 662 (Tenn. 2017). According to Father, this case supports his argument that "there is insufficient proof to indicate Father will not be able to make progress in parenting the child when he exits the Warren County Jail." Respectfully, we disagree that the *In re Gabriella* case provides support for Father's position.

In *In Re Gabriella*, the children were removed from the mother's care due to serious allegations of child neglect. 531 S.W.3d at 666. By the time of the termination trial, however, the children had been returned to the mother for a period of about two years. *Id.* at 672. During this two-year trial home visit, the mother had shown significant improvement in her parenting skills; indeed, no new issues had arisen during the trial home visit. *Id.* Nevertheless, the Court of Appeals ruled that termination of the mother's parental rights was appropriate, focusing largely on the prior neglect of the children. *Id.* at 679 (citing 2016 WL 6997816, at *20). Judge Stafford dissented on the basis that the evidence was not clear or convincing enough on the issue of best interest given the proof of the mother's lasting adjustment of circumstances. *Id.* at 680 (citing 2016 WL 6997816, at *22).[8] The Tennessee Supreme Court thereafter reversed, concluding that termination

---

[8] In his appellate brief, counsel for Father repeatedly states that the dissent was written by Judge L. Marie Williams. Judge Williams was the trial judge in *In re Gabriella*. 531 S.W.3d at 664. The undersigned authored the dissent.

was not in the children's best interest given the evidence of Mother's progress. ***Id.*** at 685–86.

The record in this case contains no similar evidence of progress by Father to gain custody of the child. While the children in ***Gabriella*** were appropriately parented by the mother for a period of two years at the time of trial, Father has only visited with this child twice in his entire life. *See* Tenn. Code Ann. § 36-1-113(i)(3). Moreover, Father has not shown a similar lasting change in circumstances. *See* Tenn. Code Ann. § 36-1-113(i)(1). Rather, at the time of trial, Father was incarcerated and unable to parent the child. *See* Tenn. Code Ann. § 36-1-113(i)(7). Indeed, although Father testified that he would have a home upon his release in 2020, he testified that his wife is currently residing in a motel room.

Importantly, Father's failure to be a part of this child's life also means that Father and the child have no meaningful relationship and that a change in caretakers would have a detrimental effect on the child. *See* Tenn. Code Ann. § 36-1-113(i)(4), (5). We have previously held that this factor is generally given considerable weight in determining a child's best interest. *See **In re Addalyne S.***, 556 S.W.3d 774, 795 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. July 30, 2018) (citing ***In re Jayvien O.***, No. W2015-02268-COA-R3-PT, 2016 WL 3268683, at \*9 (Tenn. Ct. App. June 7, 2016); ***In re Terry S.C.***, No. M2013-02381-COA-R3-PT, 2014 WL 3808911, at \*18 (Tenn. Ct. App. July 31, 2014)) ("This Court has previously indicated that in some cases the lack of a meaningful relationship between a parent and child is the most important factor[.]"). Additionally, although Father did eventually pay some support, he did so only for a short period of time following a court order to do so, despite knowing of the child's existence since his birth. *See* Tenn. Code Ann. § 36-1-113(i)(9).

Here, the evidence shows that the child has an excellent chance of becoming adopted should termination be granted. Although the child did not live with the pre-adoptive parents at the time of trial, he has visited with these potential parents more than with his own father and has become bonded to these individuals. Regardless of Father's protestations that he can provide a safe and loving home for the child, the evidence presented simply does not show that his words have been accompanied by tangible progress. By the time of trial, the child had been in DCS custody for over a year. Due to his incarceration, the result of Father's voluntary criminal activity, Father has made no progress in providing a stable home for the child.[9] Respectfully, the child is not required to wait for Father to finally show that his actions live up to his promises. The trial court's finding that termination is in the child's best interest is therefore affirmed.

**Conclusion**

---

[9] In particular when asked "what steps have you taken to get your life straight upon exiting from the Warren County jail?", Father replied with the actions that he plans to take in the future.

The judgment of the Juvenile Court of Cocke County is affirmed. This cause is remanded to the trial court for all further proceedings as are necessary and in accordance with this Opinion. Costs of this appeal are taxed to Appellant Terry. A.T., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE