IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2021 Session

**IN RE ALLEIGH B.**

**Appeal from the Chancery Court for Grundy County**
**No. A-236      Melissa T. Blevins-Willis, Chancellor**

_____

**No. M2020-00116-COA-R3-PT**

_____

A mother appeals the trial court's decision to terminate her parental rights. She challenges the trial court's determination by clear and convincing evidence that termination of her parental rights was in the best interest of the child. We affirm the trial court's termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Peter Trenchi, III, Sewanee, Tennessee, for the appellant, Ashley M.C.

Thompson G. Kirkpatrick, Manchester, Tennessee, for the appellees, David B. and Sarah B.

Matthew Sewell Bailey, Spencer, Tennessee, guardian ad litem.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Alleigh was born in September 2016 to Ashley M.C. ("Mother") and David M.B. ("Father"). Following Alleigh's birth, the family was homeless and lived in a van. Mother and Father had a short, tumultuous relationship riddled with drug abuse and domestic violence. Their relationship ended in mid-December 2016 after a domestic violence incident, during which Father beat Mother and threw her from the van after they had been awake for four or five days using methamphetamines. The police were called to the scene, and they found the child in horrid condition. She wore a swelled diaper, the skin under her neck and one of her arms was almost glued together, the milk in her bottle had curdled, and

the can of powdered baby formula contained dirt and debris. Moreover, the child wore no clothes despite the absence of heat in the van and an outside temperature of eighteen degrees. Shortly thereafter, David B., the paternal grandfather, and his wife, Sarah B. (collectively "Petitioners") gained custody of the child.

Following the domestic violence incident, Mother was arrested for a probation violation. She remained incarcerated until June 28, 2017, and upon her release from jail, she entered a specialized treatment facility called Blue Monarch, where she stayed for approximately a year and a half. After Mother entered the treatment program, the trial court permitted her overnight visitation with the child every other weekend. Blue Monarch discharged Mother in November 2018 before she completed treatment because she violated the facility's rules by using Facebook to contact a former boyfriend. According to Mother, she knew that she could be discharged for violating the facility's rules and that such a violation could affect her visitation with the child, but she nevertheless chose to contact her former boyfriend because she "needed closure." As a result of the discharge, the trial court reduced Mother's visitation with the child to three hours per week. Mother then entered the Coffee County Drug Court program, and she eventually graduated from that program.

On July 20, 2018, Petitioners filed a petition to terminate Mother's parental rights and for adoption. After hearing the matter, the trial court entered an order terminating Mother's parental rights. The court determined that the following grounds for termination had been proven by clear and convincing evidence: abandonment by failure to support and severe child abuse. Finally, the court determined that there was clear and convincing evidence that termination of Mother's parental rights was in the child's best interest.[1]

Mother appealed and presents the following issue: whether the trial court erred in determining that termination of her parental rights was in the best interest of the child.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App.

---

[1] Father voluntarily surrendered his parental rights at the termination hearing and is not a party to this appeal.

2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018) (citing *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016)).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

ANALYSIS

I. Grounds for termination.[2]

A. Abandonment by failure to support.

A parent's rights may be terminated for abandoning his or her child. Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102(1)(A) provides five alternative definitions of "abandonment," but only the definition provided in subsection (i) is relevant in this case. At the time the petition to terminate was filed, subsection (i) defined "abandonment" as:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A) (2018). A failure to support occurs when a parent, "for a period of four (4) consecutive months, [fails] to provide monetary support or . . . fail[s] to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(D). "Token support" is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(B).

Prior to July 2018, a petitioner seeking to terminate a parent's rights based on abandonment bore the burden of proving that the parent's failure to support was "willful." *See* Tenn. Code Ann. § 36-1-102(1)(A)(i) (2016). The Tennessee General Assembly amended Tenn. Code Ann. § 36-1-102(1)(A)(i) on July 1, 2018, removing the willfulness requirement from the definition of abandonment by failure to support. *See* 2018 TENN. PUB. ACTS ch. 875. The statute now provides that lack of willfulness is an affirmative defense. Tenn. Code Ann. § 36-1-102(1)(I). Thus, the parent now bears the burden of proving by a preponderance of the evidence that his or her failure to support was not willful. *Id.*

In the context of the parental termination statutes, "willfulness" does not require "malevolence or ill will." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). It requires that the conduct at issue consist "of acts or failures to act that are intentional or

---

[2] On appeal, Mother does not challenge the trial court's determination that grounds exist to terminate her parental rights. Nonetheless, we must review each ground relied upon by the trial court for terminating Mother's parental rights. *See In re Carrington H.*, 483 S.W.3d at 525.

voluntary rather than accidental or inadvertent." *Id.* We have previously explained "willfulness" as follows:

> Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.
>
> Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child.

*Id.* at 863-64 (citations and footnotes omitted); *see also In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) ("A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control.").

In the present case, Petitioners filed the petition to terminate Mother's parental rights on July 20, 2018. Thus, the relevant four-month period for determining whether Mother abandoned the child under Tenn. Code Ann. § 36-1-102(1)(A)(i) is March 20, 2018 through July 19, 2018. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (holding that the applicable four-month time period for determining whether a parent has willfully failed to support is "the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed"). The evidence shows that, during the relevant four-month period, Mother paid $50 per month in child support, which she acknowledged was less than the court-ordered child support payments of $161 per month. The only explanation Mother presented for the deficient payments was that she was in a treatment facility during the relevant time period. Although it is true that Mother was receiving treatment at Blue Monarch between March and July 2018, she admitted that she was earning a sustainable income working as a granola cook at the facility during this timeframe and that her monthly expenses were minimal. Thus, the record shows that Mother failed to provide more than token support for the child during the relevant time period, and Mother failed to prove that the failure was not willful. We conclude that the trial court properly terminated Mother's parental rights pursuant to this ground.

B. Severe child abuse.

The trial court also terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(4), which states:

The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

"Severe child abuse" is defined, in relevant part, as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). A person acts "knowingly" when he or she "ha[s] specific reason to know the relevant facts and circumstances but deliberately ignore[s] them." *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *7 (Tenn. Ct. App. July 13, 2004).

Here, Mother admitted that, after learning she was pregnant, she used methamphetamines. Because a child has "the right to begin life free from the impairment of drug addiction and other ill effects of prenatal drug use," *In re Benjamin M.*, 310 S.W.3d 844, 849 (Tenn. Ct. App. 2009), we have held that a mother's prenatal drug use constitutes severe child abuse, even in instances where the child does not actually sustain harm, *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174, at *5 (Tenn. Ct. App. July 16, 2013). Fortunately, Alleigh appears to be healthy and doing well, but her healthy development "does not diminish the severity of the harm to which [she] was exposed." *In re M.J.J.*, No. M2004-02759-COA-R3-PT, 2005 WL 873305, *8 (Tenn. Ct. App. Apr. 14, 2005). We, therefore, conclude that the trial court did not err in terminating Mother's parental rights pursuant to this ground.

II. <u>Best interest</u>.

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Mother's parental rights, we must next consider whether the trial court properly determined that termination of Mother's parental rights was in the best interest of the children. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *In re Audrey S.*, 182 S.W.3d at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. The facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court must consider the nine factors enumerated in Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof," *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

After considering all of the best interest factors, the trial court found that the factors favored terminating Mother's parental rights. *See* Tenn. Code Ann. § 36-1-113(i). The evidence in the record before us does not preponderate against the trial court's findings of fact.

The first best interest factor considers whether a parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tenn. Code Ann. § 36-1-113(i)(1). Mother has made commendable efforts to adjust her circumstances. She completed a substance abuse treatment program and, at the time of trial, she had been sober for nearly two years. After graduating from the treatment program, Mother obtained and maintained stable employment and housing. In fact, she worked two jobs so she could pay her monthly expenses and to pay extra towards her child support arrearage. Petitioners correctly point out that the home in which Mother lives is owned by the Coffee County Drug Court. It is independent housing, however, and Mother pays rent to live there. The only supervision the drug court program maintains over Mother while she lives in the home is administering drug screens to her. As long as Mother does not test positive for drugs, she may continue residing in the home. This factor does not favor termination of Mother's parental rights.

Next, the trial court considered whether Mother maintained regular visitation and had a meaningful relationship with the child. *See* Tenn. Code Ann. § 36-1-113(i)(3), (4). The evidence in the record shows that Mother maintained regular visitation with the child. Moreover, because Mother often had visitation with her older child at the same time she visited with Alleigh, Mother facilitated a relationship between the child and her sibling. We consider it significant, however, that Mother's visitation with the child was drastically reduced in 2019 after Blue Monarch discharged her for violating the facility's rules. At the time of trial, the child was almost three years old, and she had lived with Petitioners since she was two months old. Thus, we agree with the trial court that Mother established "a relationship of sorts" with the child, but the relationship was not that of parent and child. These factors favor Mother, but we do not give them significant weight.

The trial court found that the fifth best interest factor was relevant and weighed in favor of termination. This factor considers "[t]he effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical

- 7 -

condition." Tenn. Code Ann. § 36-1-113(i)(5). The child has lived with Petitioners since she was two months old. She bonded with Petitioners and calls them "mama" and "dadda." Furthermore, the child bonded with Petitioners' two biological children and considers them her siblings. Petitioners have the resources to care for the child and wish to adopt her if she becomes available for adoption. We agree with the trial court that changing the child's environment would likely have a negative effect on her emotional and psychological wellbeing.

The sixth best interest factor considers whether the parent "has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child." Tenn. Code Ann. § 36-1-113(i)(6). As discussed above, Mother committed severe abuse against the child by using drugs during her pregnancy. The evidence shows that Mother also neglected the child when she was infant. At the time of removal, the child was in horrid condition. She had a swelled diaper, her skin stuck together in several places, the milk in her bottle had curdled, the can of powdered baby formula contained dirt and debris, and she wore no clothes despite frigid temperatures and no heat in the van. Additionally, Mother had been using drugs in front of the child for four or five days. We find it significant that, at trial, Mother testified that she felt she had been taking good care of the child at the time of the removal. This leads us to believe that Mother has not learned from her past mistakes and still does not know how to properly care for her child. This factor favors termination of Mother's parental rights.

The seventh best interest factor considers the parent's home environment. *See* Tenn. Code Ann. § 36-1-113(i)(7) ("Whether the physical environment of the parent's . . . home is healthy and safe, . . . or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent . . . consistently unable to care for the child."). At the time of trial, Mother had been renting a house from the Coffee County Drug Court for several months. The parties presented no evidence that her home was inappropriate. Further, she had been sober for nearly two years. This factor weighs against terminating Mother's parental rights.

The eighth best interest factor considers whether the parent's mental or emotional status would be detrimental to the child. *See* Tenn. Code Ann. § 36-1-113(i)(8). The only evidence presented by Petitioners regarding this factor was that, in the past, Mother had been involved with abusive men. At trial, Mother acknowledged that the relationship with Father in 2016 was abusive and that she had been in other abusive relationships prior to that time. However, when the court asked how many abusive relationships she had been in since the relationship with Father ended, Mother responded "none" because she had not been in any relationships since that time. We agree with the trial court that this factor is neutral.

The ninth best interest factor considers whether the parent "has paid child support consistent with the child support guidelines." Tenn. Code Ann. § 36-1-113(i)(9). The

record shows that Mother failed to pay any child support for approximately a year and a half after the child was removed from her custody. She began paying $50 per month in March 2018 and began paying $100 per month in February 2019. Shortly before trial, Mother began paying $200 per month in child support. Nevertheless, she still had an arrearage. This factor favors termination.

Although each of the enumerated best interest factors must be considered, a court is not limited to considering only those factors. *See* Tenn. Code Ann. § 36-1-113(i). The trial court also considered Mother's discharge from Blue Monarch when determining whether termination of her parental rights was in the child's best interest. When asked about the reason for the discharge, Mother testified that she violated the facility's rule against using social media when she used Facebook to contact an old boyfriend. She knew her conduct violated the rules and could cause her to be discharged from the treatment program, but she did it anyway because she "needed closure." We agree with the trial court that this behavior is "the most striking" because, even with the termination trial in her immediate future, Mother chose to put her needs before those of her child by violating a rule she knew could result in a discharge from the program and could affect her parental rights. Thus, although Mother has made great strides in her recovery, she has not reached the point where she puts her child first.

After considering the entire record, we conclude that the combined weight of the proof establishes by clear and convincing evidence that termination of Mother's parental rights was in the child's best interest.

CONCLUSION

We affirm the trial court's termination of Mother's parental rights on both statutory grounds and affirm the trial court's conclusion that termination of Mother's parental rights is in the best interest of the child. Costs of appeal are assessed against the appellant, Ashley M.C., for which execution may issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE