IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 2, 2023

## IN RE LIAM M.

**Appeal from the Probate Court for Cumberland County**
**No. 2021PF8166      Amanda Magan Worley, Judge**

_____

## No. E2023-00370-COA-R3-PT

_____

Mother and Father divorced and Mother was given custody of their child. Mother remarried and eventually she and Stepfather filed a petition to terminate Father's rights and allow Stepfather to adopt the child. The trial court found that Father had not visited the child within four months of the filing of the petition and that termination of Father's parental rights was in the best interest of the child. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jeffrey Vires, Crossville, Tennessee, for the appellant, Eugene M.

Kevin R. Bryant, Crossville, Tennessee, for the appellees, Daniel J. and Heather J.

## OPINION

PROCEDURAL BACKGROUND

Heather J. ("Mother") is divorced from Eugene M. ("Father"). They have one child, Liam M. Mother is now married to Daniel J. ("Stepfather"). On June 28, 2021, Mother and Stepfather filed a petition to terminate Father's parental rights and for Stepfather to adopt Liam. Paragraph 16 of the petition alleges the following grounds:

A) That the Respondent has abandoned the child as defined in Tennessee Code Annotated §36-1-102, in that he has willfully and voluntarily failed to visit and/or make reasonable payments toward the support of the child for a period exceeding the statutory requirement of four (4) consecutive months immediately preceding the filing of this Petition.

B) That the Respondent has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to Tennessee Code Annotated §36-5-101;

C) That the Respondent has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation as defined in Tennessee Code Annotated §36-1-102(1)(C);

D) That the Respondent has failed to manifest an ability and willingness to assume legal and physical custody of the child;

E) That the Respondent has willfully abandoned the child pursuant to Tennessee Code Annotated §36-1-113(g)(1).[1]

After a one-day trial on February 1, 2023, the trial court issued its opinion on March 3, 2023. The court determined that clear and convincing evidence proved Father failed to visit Liam in the four months preceding the filing of the petition. The court ruled that the ground of failure to pay support failed because the support Father paid, though less than the full amount, was more than token support. The trial court also ruled that clear and

---

[1] The listed grounds are somewhat confusing due to apparent redundancy. Ground (A) of the petition is abandonment by failure to visit or pay child support for the four months preceding the filing of the petition. Ground (A) is found in Tenn. Code Ann. § 36-1-113(g)(1), abandonment as defined in Tenn. Code Ann. § 36-1-102(1)(A)(i)(a).

Grounds (B), (C) and (D) are copied from Tenn. Code Ann. §36-1-113(g)(9)(i)-(iii). These grounds deal with putative fathers. Father, although having suggested in text messages to Mother that he was not the father, did not deny at trial being Liam's father and had always been treated as the father. Father is not a putative father, therefore, we deem Grounds (B), (C) and (D) to be inapplicable. In addition, Mother and Stepfather abandoned these grounds, which were never specifically brought up at trial. In fact, the word "putative" does not even appear in the trial transcript or in counsels' arguments. The trial court's termination order also noted that these grounds were not appropriate.

Ground (E) addresses willful abandonment under Tenn. Code Ann. §36-1-113(g)(1), which incorporates the definitions of "abandonment" in Tenn. Code Ann. §36-1-102. Ground (E) is the same as Ground (A).

Thus, the petitioners tried only two of the grounds pled in their petition, abandonment by failure to visit and abandonment by failure to pay support. This is consistent with a comment in trial counsel's opening statement, "We pled grounds of abandonment based on willful failure to visit … and also, willful failure to pay meaningful support. Those are the grounds we intend to rely on."

convincing evidence proved that the termination of Father's parental rights was in Liam's best interest.

STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). This right is not absolute. *In re Angela E.*, 303 S.W.3d at 250. The Tennessee General Assembly has, by statute, established "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 establishes the grounds and proceedings by which parental rights may be terminated. Initially, a petitioner must prove that at least one termination ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. The petitioner must then prove that it is in the child's best interest to terminate the parents' rights. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "In light of the interests and consequences at stake, parents are constitutionally entitled to fundamentally fair procedures in termination proceedings." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)).

As our Supreme Court has stated:

Among the constitutionally mandated fundamentally fair procedures is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id*.; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

*Id*. Thus, on appeal, we apply the following principles:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*Id*. at 523-24.

ANALYSIS

*Failure to Visit*

The sole ground the trial court found for terminating Father's parental rights is failure to visit Liam in the four months preceding the filing of the termination petition. A parent abandons his or her child when he or she, "for a period of four (4) consecutive months, [fails] to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). "Token visitation" means visitation that, "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child[.]" Tenn. Code Ann. § 36-1-102(1)(C). In this case, the relevant four-month period for determining whether Father abandoned Liam by failing to visit him is March 28, 2021, through June 27, 2021.

At the trial, Mother testified that Father had not visited Liam in almost four years. She testified about an attempted visit in November two years before that failed when Father began cursing Mother. Liam ran from Father, locked himself in Mother's car and refused to go with Father. Mother testified that after that incident Father never called, texted or went to court seeking visitation. Father admitted that he had not seen Liam for 44 months.

At another point during the trial, Father disputed that he had not seen Liam since June of 2019, but he had no calendar or diary to support his contention. Father also testified that he saw Liam at the grocery store once or twice, but Father "didn't have actual time with him."

On appeal, Father argues that the trial judge "focused only [on] Father's actions, minimized Mother's actions, and ignored the stepfather's actions." Father testified that Mother and Stepfather interfered with Father's visitation. An interference with visitation argument is essentially an argument that Father's failure to visit was not willful. "The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure." Tenn. Code Ann. §36-1-102(1)(I). Therefore, the defense of absence of willfulness must be pled. TENN. R. CIV. P. 8.03. Father did not plead this affirmative defense, so the defense of absence of willfulness is waived. *See In re Leah T.*, No. M2022-00839-COA-R3-PT, 2023 WL 4131460, at *6 (Tenn. Ct. App. June 22, 2023).

After a thorough examination of the record, we agree that the trial court's decision to terminate Father's parental rights is supported by clear and convincing evidence.

*Best Interest*

When examining the best interest of the child in the termination of parental rights context, we are directed by statute to consider the nonexclusive factors found in Tenn. Code Ann. § 36-1-113(i)(1). The statute lists factors that the court "shall consider," *In re Angela E.*, 303 S.W.3d at 251, but a court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Similarly, the statute does not call for a mechanical determination regarding each of the factors, but rather the relevancy and weight of each factor will be unique to each case. *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005). Consequently, in certain circumstances, the consideration of one factor may be determinative. *Id*. (citing *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). However, this does not relieve a court of its duty to consider each factor and, even in cases where one factor is outcome determinative, the court must consider all factors and relevant proof that a party offers. *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

The facts considered in the best interest analysis must be proven by "'a preponderance of the evidence, not by clear and convincing evidence.'" *Id*. at 681 (quoting *In re Kaliyah S.*, 455 S.W.3d 553, 555 (Tenn. 2015)). "'After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s].'" *Id*. (quoting *In re Kaliyah S.*, 455 S.W.3d at 555).

The trial court considered all the factors in Tenn. Code Ann. § 36-1-113(i)(1) and considered several factors most relevant. The court found that Liam's need for stability and continuity would not be affected by the termination of Father's parental rights.[2] The court also found that Father had "consistently been inconsistent with child support."[3] Another important trial court finding was that "there is not a secure and healthy parental attachment between the child and [Father]. [Father] fails to visit, call, attend school functions and attend extracurricular activities."[4] Father has "disdain for his ex-wife and new husband . . . , sees himself as the victim, and takes no personal responsibility for his relationship with Liam…."[5] Moreover, the court noted that Father had not visited Liam in at least 44 months.[6] The court heard and credited "the testimony of both [Mother and Stepfather] in that the child has a close relationship with [Stepfather]."[7] As for relationships with persons other than caregivers[8], the court observed that Father maintained that his two older sons had a good relationship with Liam, yet Father also texted Mother that "Just so you know, Easton and Westin changed their numbers just in case y'all had them. They don't want nothing to do with him [Liam] until he learns to quit believing your lies…" The court found the relationship Liam had with his half-brothers not to be significant.[9]

---

[2] This finding relates to the factor in Tenn. Code Ann. § 36-1-113(i)(1)(A): "The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority."

[3] This finding relates to the factor in Tenn. Code Ann. § 36-1-113(i)(1)(C): "Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs."

[4] This finding relates to the factor in Tenn. Code Ann. § 36-1-113(i)(1)(D): "Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment."

[5] This finding also relates to Tenn. Code Ann. § 36-1-113(i)(1)(D).

[6] This finding relates to the factor in Tenn. Code Ann. § 36-1-113(i)(1)(E): "Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child."

[7] This finding relates to the factor in Tenn. Code Ann. § 36-1-113(i)(1)(H): "Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent."

[8] "Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage," is the factor in Tenn. Code Ann. § 36-1-113(i)(1)(I).

[9] Two factors the court considered relevant are not as strong as those discussed above. The factor found in Tenn. Code Ann. §36-1-113 (i)(1)(F) is "Whether the child is fearful of living in the parent's home." The trial court believed that the incident when Father cursed at Mother and Liam ran from Father and locked himself in Mother's car shows that Liam is fearful of Father. This conclusion may be true, but the evidence

The trial court's findings related to these statutory factors are solidly grounded in the testimony of the parties. We affirm the trial court in concluding that it has been proven by clear and convincing evidence that the termination of Father's parental rights is in Liam's best interest.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Eugene M., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

in the record is not sufficient to establish that this is the case. It is equally possible that Liam did not like Father's behavior and showed his disgust by running from Father. The other factor that the court found important is listed in Tenn. Code Ann. § 36-1-113 (i)(1)(S), "Whether the parent has consistently provided more than token financial support for the child." As previously noted, the court observed that Father had "consistently been inconsistent with child support." But earlier in the opinion, the court found that it did "not believe that the relevant time period shows that the payments were only token payments." Taking a longer view, the court was not persuaded that Father had made more that token payments in the past.