IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 16, 2024[1]

IN RE MITCHELL C.

**Appeal from the Juvenile Court for Hamilton County**
**No. 307381      Robert D. Philyaw, Judge**

_____

**No. E2023-01803-COA-R3-PT**
_____

The trial court terminated a father's parental rights to a minor child based on severe abuse. The trial court also concluded that terminating the father's parental rights was in the child's best interests. Father appeals. Discerning no error, we affirm the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Allison R. Cyrus-Walker, Hixson, Tennessee, for the appellant, Nathan C.[2]

Jonathan Skrmetti, Attorney General and Reporter, and Carrie A. Perras, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**BACKGROUND**

Nathan C. ("Father") appeals the termination of his parental rights to one minor child, Mitchell C. (the "Child"). The Child's mother's parental rights are not at issue. The Child was born in July of 2020, and the Department of Children's Services ("DCS") immediately removed him from his parents' custody because both parents tested positive for amphetamines at the hospital, and Father tested positive for methamphetamine. Father

---

[1] This matter was set for oral argument on this Court's July 16, 2024 docket at which time the parties agreed to waive oral argument and submit the case on briefs.

[2] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights in order to protect their privacy and identities.

admitted to using methamphetamine a few days prior to the Child's birth. Further, the Child's meconium tested positive for methamphetamine. DCS placed the Child with his paternal grandmother for a few days but removed him shortly thereafter because DCS deemed the placement inappropriate. On July 31, 2020, DCS sought temporary emergency custody of the Child and was granted same; the Child has remained in DCS custody since that time and has been with his current foster family since he was twelve days old. Two of the Child's half-siblings also reside in the foster home and have been adopted by the Child's foster parents. The Juvenile Court for Hamilton County (the "trial court") adjudicated the Child dependent and neglected in an order entered in January of 2021, finding the Child to be a victim of severe abuse at the hands of both parents due to drug exposure in utero. Father did not appeal that ruling.

Father and DCS entered several permanency plans, the first of which is dated August 24, 2020. According to DCS, the biggest issues preventing reunification were Father's unstable living situation and substance abuse. DCS deemed Father's living situation unstable in part because early in the custodial period, Father and the mother remained cohabitating and in a romantic relationship, despite it being undisputed that the mother also struggles with substance abuse. It is undisputed that Father completed some rehabilitation services early in the custodial period, such as completing a parenting assessment and an alcohol and drug assessment. Father also completed an intensive outpatient treatment program. The DCS case workers who testified at trial conceded that when Father was allowed visitation with the Child, he attended consistently and acted appropriately with the Child.

Consequently, Father had some success with his substance abuse issues early in the custodial period and passed several drug screens. However, both Father and the mother tested positive for methamphetamine in January of 2022. After the January 2022 test, Father maintained that DCS altered the test results and insisted on obtaining his own test. The test obtained by Father, which is dated April 2, 2022, was also positive for methamphetamine. Father continued testing positive for methamphetamine throughout 2022. He maintained at trial, however, that these positive drug screens were due to Father's newly acquired vehicle. Father opined that the person from whom he purchased the vehicle used methamphetamine in the car and that Father's contact with the vehicle caused the positive drug screens. Father maintained that once he stopped driving the car, his screens were negative. Father also denied the possibility that his positive screens stemmed in part from Father continuing to reside with the mother, who continued using methamphetamine, throughout 2022.

Father appeared to get back on track in early 2023. He began passing his drug screens and once again attending an intensive outpatient program. Father passed drug screens administered to him in February, March, and June of 2023. Father also moved into a new apartment without the mother in April of 2023 and later provided the lease agreement to DCS. DCS filed a petition to terminate Father's parental rights in the trial court on April

28, 2023, alleging the statutory grounds of severe abuse and persistence of conditions. DCS also alleged that terminating Father's parental rights was in the Child's best interests. The trial court held the final hearing on November 29, 2023, at which Father, the Child's foster mother, and several DCS employees testified. The Child's foster mother testified that the Child was currently three years old and had been in her custody since he was twelve days old. Despite needing various therapies, the Child was doing well. By order entered December 5, 2023, the trial court concluded that Father's parental rights should be terminated for severe abuse but also determined that DCS failed to prove the ground of persistence of conditions by clear and convincing evidence. The trial court then reviewed the best interest factors and determined that terminating Father's parental rights was in the Child's best interests. Father timely appealed to this Court.

## ISSUE

Father raises one issue on appeal, which we restate slightly:

I.      Whether the trial court erred in concluding that terminating Father's parental rights is in the Child's best interests.[3]

## STANDARD OF REVIEW

"A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)). "Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing evidence." *In re Markus E.*, 671 S.W.3d 437, 456 (Tenn. 2023). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)).

As our Supreme Court recently explained, we employ a two-step process in reviewing parental termination cases:

---

[3] While Father only challenges the trial court's ruling as to best interests, we are also required to review all statutory grounds for termination found by the trial court. *See In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016).

To review trial court decisions, appellate courts use a [] two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d at 457.

## DISCUSSION

### I.      Grounds for termination

*Severe abuse*

Parental rights may be terminated when

 [t]he parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

- 4 -

Tenn. Code Ann. § 36-1-113(g)(4).[4]  Severe abuse includes "[k]nowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]"  Tenn. Code Ann. § 37-1-102(b)(27)(E).

In this case, the trial court entered an order adjudicating the Child dependent and neglected on January 29, 2021.  The trial court reasoned that the Child was a victim of severe abuse by both his mother and Father, noting that the Child's meconium tested positive for methamphetamine at the Child's birth.  Regarding Father, the trial court found that the parents resided together during the mother's pregnancy and that Father admitted to using methamphetamine only three to four days prior to the Child's birth.  Accordingly, the trial court concluded that "[F]ather is as much responsible for the drugs in the [Child's] system as the mother."  Father did not appeal that order.

As we recently explained,

"It is well settled that a trial court may rely on a prior court order finding severe child abuse as a ground for termination and is not required to re-litigate the issue of severe abuse during the termination trial, so long as the prior order is final." *In re Neamiah R.*, No. E2017-02000-COA-R3-PT, 2018 WL 2331868, at *6 (Tenn. Ct. App. May 23, 2018). This Court has consistently applied the doctrine of res judicata to prevent a parent from re-litigating the issue of severe child abuse in a parental termination proceeding when the finding of severe child abuse has become final. *See In re Karisah N.*, No. M2018-00555-COA-R3-PT, 2018 WL 6179470, at *10 (Tenn. Ct. App. Nov. 27, 2018); *In re I.E.A.*, 511 S.W.3d 507, 517 (Tenn. Ct. App. 2016). "[A] severe abuse finding in a dependency and neglect action becomes final when it was not timely appealed following the dependency and neglect hearing." *In re Caydan T.*, No. W2019-01436-COA-R3-PT, 2020 WL 1692300, at *5 (Tenn. Ct. App. Apr. 7, 2020) (citing *In re Karisah N.*, 2018 WL 6179470, at *10; *In re Dakota C.R.*, 404 S.W.3d 484, 497-98 (Tenn. Ct. App. 2012)).

*In re Quentin G.*, No. E2023-01632-COA-R3-PT, 2024 WL 3324105, at *1 (Tenn. Ct. App. July 8, 2024), *no perm. app. filed*.

---

[4] In termination cases, we apply the version of the statute in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

Consequently, the issue of whether Father committed severe abuse as to the Child is *res judicata* from the dependency and neglect stage. Thus, DCS proved this ground for termination by clear and convincing evidence.[5]

## II.    Best interests

Having determined that at least one statutory ground for termination exists, we must determine whether terminating Father's parental rights serves the Child's best interests. Following a thorough review of the record, we agree with the trial court that it does.

"Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d at 573. As such, "[w]hen at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest." *Id.* at 572 (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)).

When conducting a best interests analysis, conflicts between the interests of the parent and child are to be resolved in "favor of the rights and best interest of the child." *Id.* at 573 (citing Tenn. Code Ann. § 36-1-101(d)). Importantly, the best interests analysis "must be viewed from the child's, rather than the parent's, perspective." *White*, 171 S.W.3d at 194. Tennessee Code Annotated section 36-1-113(i), which lists factors to be considered as part of the best interests inquiry, states that the trial court "shall consider all relevant and child-centered factors applicable to the particular case before the court." Tenn. Code Ann. § 36-1-113(i). "Ascertaining a child's best interests does not call for a rote examination" of statutory factors, and "depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White*, 171 S.W.3d at 194).

The factors provided by section 36-1-113(i) are as follows:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

---

[5] Father does not dispute the severe abuse finding on appeal.

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the

circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

In this case, the trial court correctly applied the above factors, providing a detailed best-interests analysis:

It is in the [C]hild's best interest for termination to be granted as to [Father] because the [C]hild has a critical need for stability and continuity of placement. He has been placed with the [foster family] for three years. He has had stability for the past three years and removing him from this home would cause instability.

It is in the [C]hild's best interest for termination to be granted as to [Father] because changing caretakers would have a severe negative effect on the [C]hild emotionally and psychologically. The [C]hild is three years old. The [foster parents] are the only parents he has ever known. Removing him from their care would be traumatic and detrimental to him.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he has failed to demonstrate continuity and stability in meeting any of [the Child's] basic needs. His housing has repeatedly changed, and he has plans to move again. He has not maintained a stable residence since the [C]hild has been in DCS custody.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he does not have the financial ability to provide for the [C]hild's needs since he is currently living above his means because his monthly rent alone is significantly more than his monthly income.

It is in the [C]hild's best interest for termination to be granted as to [Father] because the [C]hild has no attachment to [Father]. He has not seen him in well over a year.

It is in the [C]hild's best interest for termination to be granted as to [Father] because the [C]hild has a healthy and secure attachment with the foster family, his siblings and the extended foster family. He has lived with them since he was twelve (12) days old, and this is the only home and the only family he has ever known. The [C]hild is without an emotionally significant relationship with [Father] and therefore, terminating his rights would not have a significant impact on that relationship or any other biological familial relationship.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he has failed to demonstrate a lasting adjustment of the circumstances, conduct or conditions to make it safe and beneficial for the [C]hild to be returned to his care. He has obtained housing but has not demonstrated an ability to maintain that housing.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he started Continuing Care classes but has not attended consistently and when he does, he only attends virtually. He has a lengthy history of substance abuse, according to his own testimony, and has failed multiple drug screens over the course of this case.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he has failed to take advantage of available programs that would assist him in making lasting changes. He has failed to make a lasting adjustment of circumstances and has failed to demonstrate a sense of urgency in regaining custody of his son. The [C]hild has been in DCS custody for over three years and [Father] is not in any position to regain custody of his son today.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he has failed to demonstrate any sense of urgency in addressing the circumstances that brought his son into custody. Respondent finally completed IOP in March [] 2023. [Father] moved to a separate residence away from [the Child's mother] in April 2023 but didn't notify the Department until three months later and DCS was not allowed in that home until about a week before the trial. The home is not suitable for the [C]hild today.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he was found to be a perpetrator of severe child abuse against this [C]hild. The [C]hild was adjudicated dependent and neglected and a victim of severe abuse on January 28, 2021.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he has never provided safe and stable care for this [C]hild. The [C]hild lived with a relative after discharging from the hospital for approximately ten (10) days before being placed with the current foster parents in early August [] 2020 when he was twelve (12) days old.

It is in the [C]hild's best interest for termination to be granted as to [Father] because he even today cannot demonstrate an understanding of the basic and specific needs required for his [C]hild. Respondent has failed to demonstrate the ability and commitment to creating and maintaining an appropriate, safe home. Respondent has failed to maintain visitation and has failed to complete the necessary steps required to reinstate visitation with the [C]hild.

**All from which the court finds it clear and convincing that termination of [Father's] parental rights to the [Child] is in the [C]hild's best interests.**

The record largely preponderates in favor of the trial court's factual findings regarding the Child's best interests. The trial court correctly notes that the Child has been in his current placement for essentially his entire life, and the proof shows that the Child is bonded to his foster parents. His current placement also has the added benefit of the Child residing with two of his half-siblings, both of whom the Child is also bonded to. Indeed, even Father conceded at trial that outright removing the Child from his current placement would likely be very traumatic for the Child. Father maintained that he simply wants to reinstate his visitation and begin the process of transitioning the Child to living with Father full time. Respectfully, however, Father's proposed plan does not provide stability or continuity for the Child.

- 10 -

While we acknowledge Father's progress leading up to trial, his efforts are too little too late. The Child had been in DCS custody for three years by the time of trial, and Father only made substantial, lasting progress in the months just before trial. It follows that Father was capable of separating himself from the mother and addressing his substance abuse issues but that he dragged his feet during the first two years of the custodial period. Again, this behavior does not help establish stability or continuity for the Child, nor does it reflect a sense of urgency on Father's part. Consequently, the record supports the trial court's best interests analysis.

We would also note that other best interests factors not mentioned in the trial court's analysis further militate in favor of termination. For example, while Father maintained at trial that he and the mother are no longer in a romantic relationship, their lives appear to remain intertwined. They drove to the final hearing together, and Father testified that the mother currently lives in a house that is rented to her by Father's father. Accordingly, the proof suggests that if the Child were to return to Father's custody, he would have contact with his mother, who has never addressed her substance abuse issues. *See* Tenn. Code Ann. § 36-1-113(i)(N), (Q), (R). Father's relationship with the mother, whether it remains romantic or not, is problematic. *See id.* Further, it is undisputed that Father has another child over whom he has surrendered his parental rights; Father conceded at trial that he could not care for this child due to his substance abuse. *See id.* § 36-1-113(i)(O). As such, Father has never provided stable, consistent care for any of his children. *Id.*

Again, we recognize and commend Father for his efforts to address his issues toward the very end of the custodial period. Nonetheless, we agree with the trial court that at this late hour, Father's efforts are simply not enough. The best interests factors militate in favor of terminating Father's parental rights, especially considering that we must view the factors from the Child's, rather than Father's, perspective. Accordingly, we agree with the trial court's conclusion that terminating Father's parental rights is in the Child's best interests. Thus, we affirm the termination of Father's parental rights overall.

## CONCLUSION

The ruling of the Juvenile Court for Hamilton County is hereby affirmed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Nathan C., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

- 11 -